UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHIRLEY HITSON, MARY WOOD and
WILBERT HART,

        Plaintiffs,

vs.

FIRST SAVINGS BANK, PERFORMANCE
BANKERS, INC., BRENT DYKSTRA and
BRIAN YARRINGTON,

        Defendants.

01 AUG 23 PM 2:03

No. CIV-01 966

Karen B. Molzen

**LESLIE C. SMITH**

## NOTICE OF REMOVAL

COME NOW Defendants First Savings Bank, Performance Bankers, Inc. and Brent Dykstra, by and through their counsel of record, Kennedy, Moulton & Wells, P.C., by Debra J. Moulton, and pursuant to 28 U.S.C. §1446, submits its Notice of Removal as follows:

1.       On July 10, 2001, Plaintiffs filed their Complaint for Civil Conspiracy, Violation of the Equal Pay Act, Intentional Interference with Employment Contract, Wrongful Discharge and Negligent Retention and Supervision with the Third Judicial District Court for the County of Dona Ana, State of New Mexico.

2.       This Court has original jurisdiction over this case under 42 U.S.C. §2000d-5(f)(3) and 28 U.S.C. §1331 because Plaintiff's Complaint makes federal claims under the Equal Pay Act, 29 U.S.C. §206 et. seq., along with various other causes of action.

3.       This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. §1367(a).

4.       This Court also has original jurisdiction over this case under 28 U.S.C. §1332 because

this is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, specifically:

    a. Defendant First Savings Bank is a Federal Stock Savings Bank with its principal place of business and corporate offices in South Dakota.

    b. Defendant Performance Bankers, Inc. is a South Dakota corporation with its principal place of business and corporate offices in South Dakota.

    c. Defendant Brian Yarrington is a resident of Wyoming.

    d. Defendant Brent Dykstra is a resident of South Dakota.

    e. Plaintiffs Shirley Hitson, Mary Wood and Wilbert Hart are residents of New Mexico.

    f. Upon information and belief, the amount in controversy exceeds $75,000.00.

5. This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) in that thirty (30) days or less have passed since the Defendants accepted service.

6. Pursuant to 28 U.S.C. § 1446(a), a copy of all pleadings served upon the Defendant in this action are attached hereto as **Exhibit "A"** incorporated herein by reference.

Respectfully submitted,

KENNEDY, MOULTON & WELLS, P.C.

_____
Debra J. Moulton
2201 San Pedro NE, Bldg. 3, Suite 210
Albuquerque, New Mexico 87110
(505) 884-7887

I HEREBY CERTIFY that a true
and correct copy of the foregoing
pleading was mailed to:

Thomas L. Johnson
Foster, Johnson, McDonald, Lucero & Koinis
P.O. Box 25706
Albuquerque, NM 87125
Attorney for Plaintiff Nancy A. Fritsch

Stephen E. Hosford
P.O. Drawer 1837
Las Cruces, NM 88004-1837
Attorney for Defendant Yarrington

on this 23rd day of August, 2001.

_____
Debra J. Moulton

ENDORSED COPY

FILED
01 JUL 10 PM 12:59

DISTRICT COURT
DOÑA ANA COUNTY, NM
[illegible] SANCHEZ

STATE OF NEW MEXICO
COUNTY OF DOÑA ANA
THIRD JUDICIAL DISTRICT COURT

SHIRLEY HITSON, MARY WOOD and
WILBERT HART,

        Plaintiffs,

vs.

No. CV-2001-878

FIRST SAVINGS BANK, PERFORMANCE
BANKERS, INC., BRENT DYKSTRA
and BRIAN YARRINGTON,

        Defendants.

## COMPLAINT FOR CIVIL CONSPIRACY, VIOLATION OF THE EQUAL PAY ACT INTENTIONAL INTERFERENCE WITH EMPLOYMENT CONTRACT, WRONGFUL DISCHARGE AND NEGLIGENT RETENTION AND SUPERVISION

1.    Plaintiffs Shirley Hitson, Mary Wood and Wilbert Hart are residents of New Mexico. Their claims involve common questions of law and fact.

2.    Defendant First Savings Bank ("FSB") is a federal savings and loan institution with more than twenty employees in the State of New Mexico. It has offices in Doña Ana County and during times pertinent hereto conducted its Regional Operations out of the Las Cruces branch. Upon information and belief it is a foreign corporation authorized to and doing business in the State of New Mexico but does business through Home Federal Mortgage Company, a New Mexico corporation, for whom Defendant Yarrington is the registered agent and Defendant Dykstra is President and the Las Cruces office is its principal place of business. It has committed torts within the State of New Mexico and within Doña Ana County as set forth below.


EXHIBIT A

3. Defendant Performance Bankers, Inc. ("PBI") is upon information and belief a foreign corporation that performs business within the State of New Mexico and has committed torts within the State of New Mexico and within Doña Ana County as set forth below. It operates and manages Defendant FSB and shares directors with FSB. Dkystra serves as PBI's President.

4. Defendant Brian Yarrington was a resident of El Paso, Texas at the pertinent times set forth below, but is now a resident of Thermopolis, Wyoming. He committed torts within the State of New Mexico as set forth below.

5. Defendant Brent Dykstra is a resident of South Dakota who committed torts within the State of New Mexico as set forth below.

6. Plaintiffs have complied with all pertinent procedural prerequisites to the bringing of this suit.

7. All Plaintiffs are members of protected classifications. Plaintiff Wood is female and was born August 23, 1943. Plaintiff Shirley Hitson is female and was born August 25, 1950. Plaintiff Wilbert Hart is black.

8. Plaintiff Mary Wood began working for the predecessor of Defendant FSB in June of 1977. After FSB acquired the predecessor entity, she continued working for FSB as an Operations Supervisor/Financial Services Officer until January of 2000 at which time she was constructively discharged. Despite being highly qualified, highly experienced, and a model employee, she was paid less for her services than were the other employees who worked in equivalent positions.

9. Plaintiff Shirley Hitson was hired on or about October of 1996 and continued her employment as a Branch President until January 20, 2000 when she was wrongfully terminated.

2

She was paid less for her service as a Branch President than were males who were working in equivalent positions.

10. Plaintiff Wilbert Hart was hired on or about February 13, 1998 as the Network Administrator of the Southwest Region and his employment was wrongfully terminated on or about February 3, 2000.

11. First Savings Bank has experienced a high rate of turnover in upper management in the Southwest Region. During the 1990s, PBI oversaw the hiring and selection of four men to serve as Regional President of FSB: Larry Truax, Jim Bunn, Ken Recker and Brian Yarrington. PBI, Yarrington and Dykstra oversaw the selection and hiring of numerous people to serve as presidents of the various branches in the Southwest Region. Prior to Plaintiffs' discharge, Defendants FSB, PBI and Dykstra were or should have been aware of, the high turnover, the problems in management, and the improper treatment and illegal discrimination against persons in protected classifications, including older females, and the sole black employee, but they failed to deal with and correct the problems.

12. In 1999 Brian Yarrington was hired as Regional President of FSB at the direction of Brent Dykstra and PBI. Brian Yarrington at the time was less than thirty years old and had a personal agenda that he carried out as Regional President with the approval, support, participation and ratification of Dykstra, FSB and PBI, that included developing a workforce of younger, white employees. To the extent that females were permitted to be employed in the Southwest Region, Yarrington wanted younger females to whom he was physically attracted, with whom he flirted, and in some instances, female employees with whom he and other managers could engage in explicit sexual relations. Yarrington also sought to have younger

3

males as managers who would participate in his party behavior and who shared his aforestated personal agenda.

13. Yarrington physically exposed himself to ("mooned") his subordinates, engaged in sexual relations with a female employee at the Truth or Consequences branch, and he financially rewarded those with whom he engaged in sex or with whom he flirted. Yarrington hired, promoted, flirted with and paid attention to those younger employees that he found sexually attractive, and he hired and promoted younger males who shared his same personal agenda. Yarrington ignored and/or sought to force out the older female managers and the sole black manager in the region.

14. The female employees who worked under Yarrington's supervision in management and who were over the age of forty-five, and Plaintiff Hart, the sole black employee, were required to adhere to higher standards than other employees, were subjected to harsh scrutiny, and over time were subjected to different, less advantageous terms and conditions of employment than were the younger females or white employees. Defendants denigrated Plaintiffs' abilities and performance. Management favored younger subordinates and white subordinates in their disputes and disagreements with Plaintiffs, their older female superiors and their sole black superior. Plaintiffs Hitson and Hart were not allowed to discipline younger or white employees over whom they had direct supervisory responsibilities. Older female employees and the sole black employee received pay, assignments and economic benefits less favorable than that given to white employees and to younger females.

15. After Yarrington was hired as Regional President, Defendants succeeded in firing, demoting, disciplining or forcing the resignations of virtually every female supervisor or

4

manager in the Southwest Region who was over the age of forty-five and succeeded in firing the sole black employee.

16. On or about November 1999 an employee in the Silver City branch confessed to having embezzled monies. Neither Plaintiff Hitson nor Wood was responsible for the embezzlement but they were held accountable for the embezzlement.

17. The embezzlement was used by Defendant FSB, with all other Defendants' approval, participation and ratification, as a pretext for wrongfully, illegally, unlawfully and constructively discharging Plaintiff Wood by placing Plaintiff Wood on probation under terms that were certain to result in her ultimate termination. First Savings Bank hired a younger female to replace Plaintiff who had less experience and lesser qualifications. Other FSOs in the region who had less experience and lesser qualifications also received higher salaries.

18. Defendant FSB, at the direction of Defendant Yarrington and with Defendants Dykstra's and PBI's approval, participation and ratification, wrongfully, illegally, and unlawfully terminated Plaintiff Hitson in January, 2000 for pretextual reasons, hiring a younger male to replace Plaintiff who had less experience and lesser qualifications, and with a higher pay package.

19. After a dispute in which a younger, white female subordinate refused to follow the direction of Wilbert Hart, who was then working in Regional Management as the Network Administrator of the Southwest Division, Defendant FSB, at the direction of Defendant Yarrington and with Defendants Dykstra's and PBI's approval, participation, and ratification, wrongfully, illegally and unlawfully terminated Plaintiff Hart in February, 2000 for pretextual reasons. First Savings Bank hired a non-black employee who had less experience and lesser qualifications and at a higher salary.

5

20. Defendants FSB, Dykstra and PBI were or should have been aware of Yarrington's misconduct, yet they approved, authorized, ratified or participated in his wrongful acts and omissions.

21. Even after Defendant Yarrington was found to have engaged in improper sexual relations with a subordinate and after having fired those people who properly and legally objected to and opposed his actions, Dykstra, FSB and PBI allowed Yarrington to quit his employment as Regional President with FSB, but arranged for him to be hired as Branch President at a First State Bank in Thermopolis, Wyoming that, upon information and belief, was then being acquired by affiliates of the owner of FSB.

22. Plaintiffs Hitson and Hart repeatedly objected to the discriminatory actions being taken by FSB, PBI, Dykstra and Yarrington. Despite their repeated objections, no actions were taken to protect employees or to enforce applicable laws. Instead, Plaintiffs were disciplined and/or terminated in retaliation for complaining about the hostile environment and the improper actions by Defendants.

23. The treatment imposed on Plaintiffs during the course of their employment with FSB was mentally and emotionally taxing, painful, and exhausting.

24. Despite repeated efforts to obtain comparable employment, Plaintiffs Hitson and Wood have been unable to find comparable employment and it is unlikely that they will be able to find such because of the stain on their careers for being fired in connection with an embezzlement for which they were not responsible. Plaintiff Hart eventually was able to find other employment but he and the two female Plaintiffs have suffered substantial economic losses as a result of the wrongful termination.

25. As a result of the unfair, illegal, and improper treatment of Plaintiffs, Plaintiffs have been compelled to hire an attorney and are entitled to recover their attorneys' fees and costs incurred in pursuing this action.

## COUNT I
## CIVIL CONSPIRACY BY YARRINGTON, DYKSTRA AND PERFORMANCE BANKERS, INC.

26. Plaintiffs incorporate by reference paragraphs 1 through 25 as though the same were set forth in full herein.

27. Defendants Yarrington, Dykstra and PBI, together with other unnamed co-conspirators who were working with entitles affiliated with FSB and PBI, aided and abetted and otherwise engaged in civil conspiracy to deprive Plaintiffs Wood and Hitson of the rights to which they were entitled as females over the age of forty, to deprive Plaintiff Hart of his rights as the sole black employee in the region, and in retaliation for their complaining about and objecting to the illegal harassment, discrimination and misconduct in the workplace. Defendant Yarrington's, Dykstra's and PBI's actions adversely affected the terms and conditions of Plaintiffs' employment and contracts with FSB and eventually resulted in their wrongful and illegal terminations.

28. By reason of aiding and abetting FSB and as a result of their civil conspiracy, Defendants Yarrington, Dykstra and PBI are jointly and severally liable.

29. As a result of the conspiracy Plaintiffs are entitled to recover from these Defendants their actual and compensatory damages as set forth above.

30. Yarrington's, Dykstra's and PBI's conduct was intentional, reckless, malicious, wanton, and of such a character that punitive damages should be imposed upon each Defendant to punish them and to deter them and others from engaging in similar conduct.

7

## COUNT II
## VIOLATION OF THE EQUAL PAY ACT
## BY DEFENDANT FIRST SAVINGS BANK

31. Plaintiffs Hitson and Wood incorporate by reference paragraphs 1 through 30 as though the same were set forth in full herein.

32. During Hitson's and Wood's employment, Defendant FSB intentionally and willfully paid Plaintiffs Hitson and Wood sums that were less than wages and other benefits paid to male employees equivalently situated in violation of 29 U.S.C.A. § 206 et seq.

33. Plaintiffs Hitson and Wood are entitled to recover from Defendant FSB such damages as are permitted by the Equal Pay Act, including, without limitation, compensatory damages, liquidated damages, attorneys' fee and costs.

## COUNT III
## NEGLIGENT RETENTION AND SUPERVISION BY
## DEFENDANTS DYKSTRA, FIRST SAVINGS BANK
## AND PERFORMANCE BANKERS, INC.

34. Plaintiff incorporate by reference paragraphs 1 through 33 as though the same were set forth in full herein.

35. Prior to Plaintiffs' wrongful discharges, Defendants Dykstra, FSB and PBI were, or should have been aware of Defendant Brian Yarrington's wrongful conduct and dangerous propensities. It was foreseeable to them that Yarrington's tortious conduct would result in harm and injury to Plaintiffs and others similarly situated.

36. Dykstra, FSB and PBI nonetheless failed to act to protect Plaintiffs and others from Defendant Yarrington.

8

37. Dykstra, FSB and PBI negligently supervised Defendant Yarrington and negligently retained him in his position notwithstanding their knowledge of Yarrington's acts, omissions and propensities.

38. As a result of Dykstra's, FSB's and PBI's negligent retention and supervision of Defendant Yarrington, Plaintiffs were injured and have sustained actual and compensatory damages and are entitled to recover from Dykstra, FSB and PBI their actual and compensatory damages.

39. Dykstra's, FSB's and PBI's conduct was intentional, reckless, malicious, wanton and is of such a character that punitive damages should be imposed to punish Defendants and to deter them and others from engaging in similar misconduct.

## COUNT IV
## INTENTIONAL INTERFERENCE WITH CONTRACT BY YARRINGTON

40. Plaintiffs incorporate by reference paragraphs 1 through 39 as though the same were set forth in full herein.

41. Defendant Brian Yarrington utilized improper motives consistent with his own personal agenda and improper means, including discrimination and false accusations, in order to obtain the wrongful termination of Plaintiffs' employment with Defendant FSB.

42. As a result of Defendant Yarrington's interference with Plaintiffs' contract rights, which contractual rights would have continued indefinitely into the future were it not for the interference by Defendant Yarrington, Plaintiffs have sustained actual and compensatory damages.

9

43. Defendant Yarrington's conduct was intentional, reckless, malicious, wanton and is of such a character that punitive damages should be imposed to punish Defendant and to deter him and others from engaging in similar misconduct.

## COUNT V
## WRONGFUL TERMINATION BY FIRST SAVINGS BANK

44. Plaintiffs Hitson and Hart incorporate by reference paragraphs 1 through 43 as though the same were set forth in full herein.

45. Plaintiffs Hitson and Hart were discharged by Defendant FSB in violation of public policy for having objected to and opposed the hostile environment and illegal discrimination at FSB, which objections and opposition were taken in furtherance of public interests rather than private interests.

46. As a result of the retaliatory discharge by FSB, Hitson and Hart sustained the damages set forth above.

47. Defendant FSB's conduct was intentional, reckless, malicious, wanton and is of such a character that punitive damages should be imposed to punish FSB and to deter it and others from engaging in similar misconduct.

## COUNT VI
## PRIMA FACIE TORT AS TO ALL DEFENDANTS

48. All Plaintiffs incorporate by reference paragraphs 1 through 47 as though the same were set forth in full herein.

49. Defendants' actions, to the extent otherwise lawful, constitute Prima Facie tort in that their acts were intentional, without justification or excuse, and designed to injure Plaintiffs.

50. As a result of Defendants' actions, Plaintiffs have sustained the damages set forth above.

10

51. Defendants' conduct was intentional, reckless, malicious, wanton and of such a character that punitive damages should be imposed to punish Defendants and to deter them and others from engaging in similar misconduct.

WHEREFORE, Plaintiffs pray that judgment be granted in their favor and against Defendants awarding them:

1. Actual economic damages;

2. Compensatory damages, including damages for pain, suffering and emotional distress and discomfort;

3. Punitive damages;

4. Liquidated damages;

5. Attorneys' fees and costs;

6. Joint and several liability; and

7. Such other and further relief as is deemed just and proper under the circumstances.

**FOSTER·JOHNSON·McDONALD·LUCERO·KOINIS LLP**

By _____
THOMAS L. JOHNSON
Attorneys for Plaintiffs
P.O. Box 15706
Albuquerque, NM 87125-5706
(505) 243-3000

11