IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SHIRLEY HITSON and
WILBERT HART,

           Plaintiffs,

vs.                                      **No. CIV 01-0966 LCS/KBM-ACE**

FIRST SAVINGS BANK, PERFORMANCE
BANKERS, INC., BRENT DYKSTRA
and BRIAN YARRINGTON,

           Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** came before the Court on Defendant First Savings Bank's Renewed Motion for Judgment as a Matter of Law or for a New Trial (Doc. 229), filed November 25, 2002, and Plaintiffs' Rule 59 Motion to Alter or Amend the Judgment (Doc. 238), filed December 12, 2002. The United States Magistrate Judge, acting upon consent and designation pursuant 28 U.S.C. § 636(c), and having considered the briefs, submissions, relevant law, and being otherwise fully advised, finds that Defendant's Motion should be **DENIED** and that Plaintiffs' Motion should be **DENIED** as to pre-judgment interest and **GRANTED** as to post-judgment interest.

On July 10, 2001, Plaintiffs filed a complaint in the Third Judicial District Court, County of Doña Ana, State of New Mexico, alleging civil conspiracy, violation of the Equal Pay Act, intentional interference with employment contract, wrongful discharge, and negligent retention and supervision. On August 23, 2001, Defendants FSB, PBI, and Dykstra removed the action to this Court pursuant

to 28 U.S.C. §§ 1441 and 1446.  On November 27, 2001, Plaintiffs filed a First Amended Complaint, alleging age, sex and race discrimination in the terms, conditions and privileges of employment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C.§ 621 *et seq.,* and supplemental state law claims.

Specifically, in Count I, Plaintiffs Hitson and Wood alleged sex discrimination against Defendant FSB in violation of Title VII.  In Count II, Plaintiff Hart alleged racial discrimination against Defendant FSB in violation of Title VII.  In Count III, Plaintiffs Hitson and Wood alleged age discrimination against Defendant FSB.  In Count IV, Plaintiffs Hitson and Hart alleged retaliation against Defendant FSB in violation of  Title VII.  In Count V, Plaintiffs alleged civil conspiracy against Defendants Yarrington, Dykstra and PBI.  In Count VI, Plaintiffs Hitson and Wood alleged violation of the Equal Pay Act against FSB.  In Count VII, Plaintiffs alleged negligent retention and supervision by Defendant Dykstra, FSB and PBI.  In Count VIII, Plaintiffs alleged intentional interference with contractual relations against Defendant Yarrington.  In Count IX, Plaintiffs Hitson and Hart alleged wrongful termination against FSB.  In Count X, Plaintiffs alleged prima facie tort against all Defendants.

Plaintiff Wood settled her claims on September 10, 2002.  On October 2, 2002, I issued a Memorandum Opinion and Order granting Defendants' Motions for Summary Judgment as to Counts V, VII, VIII, and X, and disposing of all claims against Defendants Performance Bankers, Inc., Dykstra, and Yarrington.  On October 29, 2002-November 8, 2002, Counts I, II, III, IV, VI, and IX (Gender Discrimination, Racial Discrimination, Age Discrimination, Retaliation, Equal Pay Act, and Wrongful Termination, respectively) against Defendant First Savings Bank came on for trial before

2

the Court and a jury.   At the close of Plaintiffs' case-in-chief, Defendant moved for a judgment as

a matter of law pursuant to FED.R.CIV.P. 50(b).  I ruled in favor of Defendant as to Count VI, the

Equal Pay Act claim, but denied the motion as to Counts I, II, III, IV, and IX.  At the close of the

evidence, Defendant renewed its Rule 50 motion, which I denied.

On November 8, 2002, the jury returned its verdict in favor of Defendant on Count III (Age

Discrimination), and in favor of Plaintiffs as to Counts I, II, IV, and IX (Gender Discrimination,

Racial Discrimination, Retaliation, Equal Pay Act, and Wrongful Termination, respectively).   On

November 12, 2002, I requested briefing on the applicability of the damage limitation of 42 U.S.C.§

1981a(b), and directed counsel to file their post-trial motions within ten days.  On December 4, 2002,

having determined that the damage cap was inapplicable, I entered Judgment on the Memorandum

Opinion and the Verdicts.  Judgment was entered in favor of Plaintiff Hitson in the amount of

$232,202.00 in back pay, $202,003.00 in future damages, $60,000.00 in compensatory damages, and

$250,000.00 in punitive damages for a total judgment for Hitson of $744,205.00.  Judgment was

entered for Plaintiff Hart in the amount of $123,930.00 in back pay, $30,000.00 in future damages,

$20,000.00 in compensatory damages, and $250,000.00 in punitive damages, for a total judgment

for Hart of $423,930.00.

## I.    Defendant's Renewed Motion for Judgment as a Matter of Law or for a New Trial

Defendant has renewed its motion for judgment as a matter of law pursuant to Rule 50(b).

This section provides:

> If, for any reason, the court does not grant a motion for judgment as
> a matter of law made at the close of all the evidence, the court is
> considered to have submitted the action to the jury subject to the
> courts later deciding the legal questions raised by the motion. The
> movant may renew its request for judgment as a matter of law by

filing a motion no later than 10 days after entry of judgment and may alternatively request a new trial or join a motion for a new trial under Rule 59.

FED. R. CIV. P. 50(b).

"A motion for a judgment as a matter of law is cautiously and sparingly granted," *Weese v. Schukman*, 98 F.3d 542, 547 (10th Cir.1996), and is appropriate only if the evidence, viewed in the light most favorable to the non-moving party, "points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Sanjuan v. IBP, Inc.*, 275 F.3d 1290, 1293 (10th Cir. 2002). A party is entitled to judgment as a matter of law only if there is no legally sufficient evidentiary basis for the claim. *Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091, 1103 (10th Cir. 2001). In ruling on a motion for judgment as a matter of law, the court may not consider the credibility of witnesses, resolve conflicts in testimony, weigh the evidence, or substitute its judgment for that of the jury. *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1241 (10th Cir. 2001).

Defendant's motion for judgment as a matter of law is premised on the arguments that the evidence was insufficient to support the verdict and that the verdict was against the clear weight of the evidence. In order to prove their discrimination claims, Plaintiffs were required to show that (1) they were within one of the protected groups (gender, or race), (2) adverse employment actions were taken against them, (3) they were doing satisfactory work at the time the adverse employment actions were taken, and (4) their gender or race was at least one of the motivating factors for the adverse employment actions. *See McDonnell Douglas Corp.*, 411 U.S. 792, 802 (1973); *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996); *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998). With respect to their Title VII retaliation claims, Plaintiffs needed to show that (1) they engaged in protected opposition to discrimination; (2) they were subjected to

4

adverse employment actions; and (3) a causal connection exists between the protected activities and the adverse actions. *See McCue v. Kansas Dep't of Human Resources*, 165 F.3d 784, 789 (10th Cir. 1999).

In addition, for their Title VII discrimination and retaliation claims, Plaintiffs needed to demonstrate that the reasons offered by Defendant for their terminations were not the "true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). A plaintiff can show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)(quotations omitted). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148. Evidence of pretext may include, but is not limited to: "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating ... criteria); and the use of subjective criteria." *Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002)(quoting *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999)). For their state law retaliatory discharge claims, Plaintiffs had the burden of presenting evidence that they were discharged in violation of state public policy against sexual harassment by showing that their opposition to the mooning incident was a motivating factor in the decisions to discharge them. *See* N.M. UJI Civ. 13-2304.

At trial, Plaintiffs presented sufficient evidence to establish all the elements of all of the claims

on which they prevailed.  Plaintiffs were undoubtedly members of protected classes and adverse employment actions were taken against them. When viewed in the light most favorable to Plaintiffs, there was evidence of racial animus and long-standing gender bias on the part of upper management at First Savings Bank, thus demonstrating that discrimination played a role in the decisions to terminate Plaintiffs.  After Plaintiff Hitson complained about Ken Recker's treatment of women, she was given two warnings.  These warnings may have been pretextual because they were based on conduct of her superiors.  There was evidence that Plaintiffs reported the mooning incident to Karla Birgen after August 1999, and that Brian Yarrington learned that Plaintiffs had reported the mooning incident within a month of the terminations.  This evidence was sufficient to establish a causal connection and retaliation.

As to pretext, Plaintiffs presented evidence that they were subjected to harsher discipline and more closely scrutinized than other employees, that they were paid less than other employees, that they received favorable performance reviews soon before they were terminated, and that there were procedural irregularities in the manners in which they were terminated.  Viewed in the light most favorable to Plaintiffs, the evidence indicated that other employees may have instigated the confrontations and that Plaintiffs were in effect "set up" to be terminated.  There was sufficient evidence from which the jury could find that Defendant's proffered explanations for the adverse actions were unworthy of belief and pretextual. When viewed in the light most favorable to Plaintiffs, the evidence presented to the jury was more than sufficient to support the verdicts.  Defendant's motion for judgment as a matter of law should be denied.

Defendant additionally moves for a new trial under FED.R.CIV.P. 59(a).  The motion is timely because it was filed no later than ten days after entry of judgment.  *See* FED.R.CIV.P. 59(b).  The

determination of whether circumstances justify the granting of a new trial is left to the discretion of the trial judge. *Sanjuan*, 160 F. 3d at 1296. The Court has the power and duty to order a new trial in order to prevent injustice. 11 WRIGHT, MILLER & KANE CIVIL 2d § 2805, 55 (2001). However, a new trial is warranted only if trial error affected the substantial rights of the parties, *see* FED.R.CIV.P. 61, and where the verdict was against the weight of the evidence, the damages were excessive, there was improper conduct affecting the jury, or substantial errors in the admission or rejection of evidence or the giving and refusal of instructions. 11 WRIGHT, MILLER & KANE CIVIL 2d § 2805, 54-55.

Defendant asserts that it is entitled to a new trial because the verdict was contrary to the clear weight of the evidence, the jury was permitted to hear inadmissible evidence, a juror was improperly dismissed, the jury instructions were erroneous, and the jury's back pay calculations were erroneous. When analyzing a motion for a new trial on the ground that the verdict is against the weight of the evidence, the inquiry focuses on whether the verdict is "'clearly, decidedly or overwhelmingly against the weight of the evidence.'" *Veile v. Martinson*, 258 F.3d 1180, 1188 (10th Cir. 2001)(quoting *Getter v. Wal-Mart Stores, Inc.*, 66 F.3d 1119, 1125 (10th Cir. 1995)). As more fully discussed above, sufficient evidence supported the verdicts and they were not against the weight of the evidence.

Defendant contends that evidence was admitted in error. Specifically, Defendant challenges the admissibility of the testimony of former employees describing their treatment by Recker that occurred more than three hundred days before the filing of Plaintiffs' charges of discrimination, a comment made by Brent Dykstra over two years after Plaintiffs were terminated, testimony from Wendy Speer about alleged inappropriate conduct and retaliation by Yarrington, evidence of an

alleged affair between Hector Briseño and a female branch president, and other alleged misconduct by Briseño. With respect to each challenged evidentiary ruling, I stated my rationale either on the record or in my Order of September 18, 2002. I believe that my rulings were correct.

Evidence of misconduct by other managers and bank officers was relevant to Plaintiffs' disparate treatment claims and to show pretext. As to the Speer testimony, I had ruled earlier that Speer's testimony should be limited only to testimony that Yarrington had wanted to have sex with her, and that details regarding the threesome and the former stripper should be excluded. After Speer blurted out these details, Defendant failed to immediately move to strike or request a limiting instruction. Later, when Defendant moved for a mistrial, I offered to give a limiting instruction, but Defendant never submitted one. Evidence admitted in error can only be prejudicial "if it can be reasonably concluded that with or without such evidence, there would have been a contrary result." *Sanjuan*, 160 F.3d at 1296 (quoting *Hines v. General Motors Corp.*, 988 F.2d 1039, 1049 (10th Cir. 1993)). When considered against the backdrop of the entire eight days of testimony, the challenged evidence was not particularly compelling or persuasive. Having heard all the testimony and having observed the demeanor of the witnesses and the reactions of the jurors, I have no doubt that the outcome of the trial would have been the same even if the challenged evidence had been excluded.

Defendant moves for a new trial because I dismissed a juror on the second day of trial. The juror indicated during *voir dire* that his employer would have difficulty functioning without him during the general election, which was slated to occur during the trial. I refused to dismiss the juror for cause, and he was selected to serve on the jury. At about 8:15 a.m. on the second day of trial, the juror submitted a letter to me in a sealed envelope indicating that his personal experiences with mooning incidents made it difficult for him to believe Plaintiff Hitson's testimony and that he had

already decided to disbelieve her testimony.  Counsel and I questioned the juror on the record in chambers.  The juror denied any bias and stated that he could be fair.  The juror stated that he had not discussed any of his personal experiences or his premature credibility determination with the other jurors.  I admonished the juror not to discuss anything with his fellow jurors and continued with the trial.  After considering my personal observations of the juror's demeanor and reviewing the applicable law, I dismissed the juror at the morning break.

Implied bias can also be found when there are similarities between the personal experiences of the juror and the issues being litigated and even though a juror denies any partiality. *Skaggs v. Otis Elevator Co.*, 164 F.3d 511, 514 (10th Cir. 1998)(quoting *Gonzales v. Thomas*, 99 F.3d 978, 984 (10th Cir. 1996)). "'[T]he district court is in the best position to observe the juror and to make a first-hand evaluation of his ability to be fair.'" *Skaggs*, 164 F.3d at 517 (quoting *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1467 (10th Cir. 1994)).  I observed the juror firsthand in chambers. I disbelieved his statements that he could be impartial in light of the inconsistent statements in his letter.  I was particularly concerned that this juror was not following my preliminary instructions on the second day of trial.  At that point, Plaintiff's first witness, Shirley Hitson, had not finished testifying and I had only given the jury three instructions; one directing them to refrain from reaching conclusions until they heard all of the evidence.  The juror in question had disregarded one third of the instructions that I had given him up to that point.  I was concerned that this juror would be unable to follow my instructions throughout the trial and during deliberations.  For these reasons, I properly excused the juror.

Defendant argues that I erred in submitting a punitive damages instruction to the jury, that I should have submitted an instruction under *Kolstad v. American Dental Ass'n*, 527 U.S. 526

(1999), and that I erred in refusing some of Defendant's instructions. The evidence was sufficient to support the punitive damages instruction. *Kolstad* was inapplicable because vicarious liability was not an issue. *See Dodoo v. Seagate Tech. Inc.* 235 F.3d 522, 531 (10th Cir. 2000). With respect to the other instructions, I made my rulings on the record and I believe that they were correct. I submit that my instructions to the jury "properly stated the applicable law and focused the jury on the relevant inquiry." *Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1212 (10th Cir. 2002).

Finally, Defendant argues that the jury's back pay calculations were erroneous and should be reduced. There was considerable testimony that Defendant used a variety of factors in setting salary rates and that other employees in similar positions were paid substantially more than Plaintiffs were paid. There was also evidence that some employees were permitted to use bank vehicles for personal purposes, that fringe benefits were considerable, and that some employees were given substantial bonuses. In light of all the evidence, I find that the jury's back pay awards are supported by a preponderance of the evidence and that the jury's awards should not be reduced.

## II.    Plaintiffs' Rule 59 Motion to Alter or Amend the Judgment.

On December 12, 2002, Plaintiffs filed their Motion to Alter or Amend the Judgment pursuant to Federal Rule Civil Procedure 59(e). The motion is timely and properly brought under Rule 59(e). *See Capstick v. Allstate Ins. Co.*, 998 F. 2d 810, 812-13 (10th Cir. 1993). The purpose of prejudgment interest is to compensate the wronged party for being deprived of the monetary value of his or her loss from the time of the loss to the payment of the judgment. *Greene v. Safeway Stores, Inc.*, 210 F.3d 1237, 1247 (10th Cir. 2000). Title VII authorizes the district court to award prejudgment interest on back pay awards under Title VII to make the plaintiff whole. *Loeffler v. Frank*, 486 U.S. 549, 557 (1988). "Otherwise, the employer would have an 'interest free' loan on

wages due, but unpaid." *Daniel v. Loveridge*, 32 F.3d 1472, 1478 (10th Cir. 1994).  If punitive damages have been awarded, have prejudgment interest may not be appropriate because the plaintiffs have been fully compensated for their losses.  *Ward v. Wal-Mart Stores, Inc.* CIV 99-1070 BB/WWD (Nov. 19, 2001).  The policy against excess recovery is reflected in the Tenth Circuit rule that prejudgment interest is unavailable under the ADEA if plaintiffs received liquidated damages. *Greene*, 210 F.3d at 1247 (citing *Blim v. Western Elec. Co.*, 731 F. 2d 1473, 1480 (10th Cir. 1984)).

In this case, Plaintiff Hitson was awarded damages in the amount of $232,202.00 in back pay; $202,003.00 in future damages, $60,000.00 in compensatory damages, and $250,000.00 in punitive damages for a total judgment of $744,205.00.  Plaintiff Hart was awarded $123,930.00 in back pay, $30,000.00 in future damages, $20,000.00 in compensatory damages, and $250,000.00 in punitive damages, for a total judgment of $423,930.00.  In light of all the evidence presented at trial, the damage amounts awarded by the jury fully compensated Plaintiffs for their losses.  Under these circumstances, I find that an award of prejudgment interest would be inappropriate.

Post-judgment interest on a federal court civil judgment is determined according to federal law.  *See* 28 U.S.C. §1961.  This statute provides that interest shall be calculated from the date of judgment at the weekly average 1-year constant maturity Treasury yield for the week preceding the date of judgment.  *Id.*  Plaintiffs are entitled to post-judgment interest at the statutory rate pursuant to 28 U.S.C. §1961.

**WHEREFORE,**

**IT IS ORDERED** that Defendant First Savings Bank's Renewed Motion for Judgment as a Matter of Law or for a New Trial (Doc. 229), filed November 25 2002, is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Rule 59 Motion to Alter or Amend the

Judgment (Doc. 238), filed December 12, 2002, is **DENIED** as to Plaintiffs' request for pre-judgment interest and **GRANTED** as to Plaintiffs' request for post-judgment interest.

 

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**